RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0420P (6th Cir.)
File Name: 01a0420p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: WILLIAM KYLE
KISSEBERTH and EKATERINA
KISSEBERTH,
    *Debtors.*

No. 00-3715

_____

RONALD R. HENDERSON,
    *Appellant,*

*v.*

WILLIAM KYLE KISSEBERTH
and EKATERINA KISSEBERTH,
    *Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 99-07567—James G. Carr, District Judge.

Argued: October 24, 2001

Decided and Filed: December 12, 2001

Before:  BOGGS and GILMAN, Circuit Judges; QUIST,
District Judge.*

———————

**COUNSEL**

**ARGUED:**   Ronald  R.  Henderson,  Toledo,  Ohio,  for
Appellant.  Elliot H. Feit, BARRY & FEIT, Toledo, Ohio,
Derrick V. Rippy, U.S. TRUSTEES OFFICE, Cleveland,
Ohio, for Appellees.  **ON BRIEF:**  Ronald R. Henderson,
Toledo, Ohio, for Appellant. Elliot H. Feit, BARRY & FEIT,
Toledo, Ohio, Derrick V. Rippy, U.S. TRUSTEES OFFICE,
Cleveland, Ohio, for Appellees.

———————

**OPINION**

———————

RONALD  LEE  GILMAN,  Circuit  Judge.   Ronald  R.
Henderson,  an  attorney  who  represented  William  Kyle
Kisseberth and Ekaterina Kisseberth in their bankruptcy case,
sued  the  Kisseberths  in  state  court  to  collect  $3,212.02  in
unpaid  attorney  fees  following  the  close  of  the  bankruptcy
proceeding.  The Kisseberths responded by filing a motion to
reopen  their  bankruptcy  case.   Henderson  then  filed  an
application for attorney fees in the bankruptcy court. Because
the  bankruptcy  court  found  that  Henderson's  fees  were
excessive  and  that  he  had  not  disclosed  to  the  court  the
majority of the fees charged, the court ordered Henderson to
disgorge $9,600.00 of the $11,887.98 that he had previously
collected, as well as to forfeit any claim to the unpaid fees.
On  appeal,  the  district  court  upheld  the  order  of  the
bankruptcy court in part and reversed in part.  For the reasons
set forth below, we **AFFIRM** the judgment of the district
court.

———————

*The Honorable Gordon J. Quist, United States District Judge for the
Western District of Michigan, sitting by designation.

## I.  BACKGROUND

### A.   Factual background

The Kisseberths owned and operated two jewelry stores in Toledo, Ohio.  In 1994, one of their stores was destroyed by fire.  Although the Kisseberths had insured their business through Eagle American Insurance Company, they were unable to recover any part of their loss because an Ohio court determined that they had intentionally caused the fire.  On March 11, 1994, four days before the insurance ruling, the Kisseberths retained Henderson, an experienced bankruptcy attorney, to counsel them regarding their poor financial condition.  Two months later, the Kisseberths, with Henderson as their counsel, filed a joint petition for personal bankruptcy under Chapter 7 of the United States Bankruptcy Code.

Henderson included a compensation statement in the Kisseberths' bankruptcy petition, as required by § 329 of the United States Bankruptcy Code and Rule 2016(b) of the Federal Bankruptcy Rules.  In the compensation statement, Henderson disclosed that he had been paid a $1,500 retainer and that he would be billing the Kisseberths $100 per hour for his services.  During the two months between the hiring of Henderson in March of 1994 and the filing of the bankruptcy petition in May of that year, Henderson had already billed $5,420 in legal fees for approximately 50 hours of work.  Henderson did not disclose this fact in the Chapter 7 petition, and the Kisseberths testified that they were unaware of the size of Henderson's prepetition fees.  According to Henderson, these fees were incurred in (1) preparing the Chapter 7 petition, (2) preserving the possible appeal of the state court's adverse insurance judgment, and (3) handling general matters concerning the Kisseberths' financial affairs.

After the Kisseberths' bankruptcy case had begun, the United States Trustee assigned to their case decided to appeal the insurance ruling.  The bankruptcy court required the Kisseberths to personally bear a portion of the financial burden of the appeal, based on its determination that they

would indirectly benefit from a favorable outcome. Specifically, the Kisseberths were required to pay $6,196 for the appellate transcript. William Kisseberth's mother, Bonnie Kisseberth, along with two other relatives, loaned the Kisseberths the funds to pay for the transcript. The funds were tendered to Henderson's law firm with the express understanding that the lenders were to be paid back in the event of any recovery in the insurance case.

Henderson ultimately recorded 147.2 billable hours on the Kisseberths' bankruptcy case, bringing the total cost for his legal services to $15,100. The large number of hours spent on the case, Henderson maintained, was justified because the petition was "not an ordinary Chapter 7 no asset case." Henderson, for example, notes that the case was open for 27 months and involved a business with over 100 unsecured creditors. He also testified that his postpetition services involved, among other things, (1) attending the statutorily required meeting of creditors, (2) avoiding a possible $100,000 creditor action against the Kisseberths' estate, and (3) conducting negotiations with a party that was considering an action to prevent the Kisseberths from receiving a discharge in bankruptcy due to their fraud. In addition, Henderson aided in the appeal of the adverse insurance judgment, even though the Kisseberths and the Trustee had retained two other lawyers for this purpose. Henderson was not asked for this help by the Kisseberths or the Trustee, nor had he been approved by the bankruptcy court to act as legal counsel in this matter.

Eagle American settled the insurance case while the appeal was pending, despite the trial verdict in its favor. Funds became available from the proceeds of this settlement to reimburse the Kisseberths' relatives for the funds that they had provided for the appellate transcript. Instead of returning the advanced amount directly to the relatives, however, Henderson applied $6,787.98 to the unpaid fees for his work on the Kisseberths' bankruptcy case. The Kisseberths, meanwhile, had personally paid Henderson $5,100 toward his

were not part of the estate, and because the Kisseberths' petition was brought under Chapter 7, not Chapters 11, 12, or 13, the appropriate and equitable allocation of the transcript funds is to the "entity that made such payment."

The ultimate source of the transcript funds, of course, is Bonnie Kisseberth and the two other relatives. But as between the parties to this appeal, the Kisseberths are the "entity that made such payment," because the funds were tendered on their behalf and they are obligated to repay the loan. The district court's allocation of the transcript funds to the Kisseberths is therefore equitable, and not an abuse of discretion. We trust that the Kisseberths will in turn relay the funds back to their original sources; if not, the concerned parties can address that issue separately from the bankruptcy proceeding.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

In allocating the transcript funds to the bankruptcy estate, the district court found that the bankruptcy court had abused its discretion because those funds were not properly part of the bankruptcy estate. We agree. The Kisseberths' bankruptcy estate consisted of their assets as of the time the petition was filed. 11 U.S.C. § 541 (defining the bankruptcy estate). Because the transcript funds were transferred to the Kisseberths as a postpetition loan from third parties long after the petition was filed, these funds were never part of the bankruptcy estate. *Id.* Although the transcript funds benefitted the bankruptcy estate by enabling the Kisseberths to appeal their insurance case and reach a settlement, the funds were expected to be returned to their source from the proceeds of any settlement. Allocation of the transcript funds to the estate would thus constitute an inequitable windfall because it would allow the estate to keep for itself funds that were provided to Henderson's law firm on behalf of the debtors through a postpetition loan.

The district court reversed the bankruptcy court's allocation and instead directed that the transcript funds be given to the Kisseberths personally. We agree that this was the proper disposition. The section of the Bankruptcy Code that addresses the allocation of excessive fees, 11 U.S.C. § 329, provides that such funds should be returned to the bankruptcy estate if they:

(A) would have been property of the estate; or
(B) [were] to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of [the Bankruptcy Code] . . . .

11 U.S.C. § 329(b)(1). If neither of the above conditions is met, then § 329 provides that the funds should be allocated to the "entity that made such payment." 11 U.S.C. § 329(b)(2). Although we recognize that § 329 deals with the disgorgement of fees only to the extent that they are excessive, we see no reason why the principles of allocation set forth in § 329 should not apply to all of the funds disgorged in the present case. Because the transcript funds

$15,100 total bill. At the completion of the bankruptcy proceedings, $3,212.02 remained unpaid.

Henderson did not disclose to the bankruptcy court the subsequent payments by the Kisseberths or his retention of the funds paid to him from the proceeds of the insurance case settlement. Rule 2016(b) of the Federal Bankruptcy Rules requires a debtor's counsel to report the receipt of fees during the course of bankruptcy proceedings. There is no dispute that Henderson failed to comply with Rule 2016(b), although Henderson contends that his noncompliance was inadvertent.

### B.    Procedural history

In December of 1997, after the bankruptcy case was closed, Henderson sued the Kisseberths in an Ohio state court for the $3,212.02 unpaid balance of his fees. The Kisseberths, in turn, filed a motion to reopen their bankruptcy case. In addition, Bonnie Kisseberth sued Henderson in state court to recover the $6,196 that she and two other relatives had advanced for the appellate transcript.

After the Kisseberths filed the motion to reopen their bankruptcy case, Henderson filed an application for fees in the amount of $15,100 in the bankruptcy court. He disclosed that he had been paid $11,887.98, including the transcript funds that he had applied toward his fees.

The bankruptcy court held a pretrial conference on October 20, 1998, at which time it asserted the authority to determine the proper amount of fees to be paid Henderson for services rendered in the bankruptcy proceeding. Although it expressed uncertainty about its jurisdiction to adjudicate Bonnie Kisseberth's claim for recovery of the transcript funds, the bankruptcy court ordered Henderson to disgorge $9,600.00 of the $11,887.98 that he had collected, including the transcript funds. The transcript funds were then allocated to the bankruptcy estate, with the rest of the disgorgement going to the Kisseberths. In addition, the bankruptcy court ordered a forfeiture of the unpaid balance of the funds that Henderson had sought to collect through his state court action

against the Kisseberths. That case had been removed to the bankruptcy court pursuant to 28 U.S.C. § 1452 (authorizing removal of cases related to bankruptcy proceedings).

Henderson appealed the bankruptcy court's order to the United States District Court for the Northern District of Ohio. The district court rendered a decision on March 31, 2000, affirming the order of the bankruptcy court. On April 12, 2000, the district court modified its March 31, 2000 decision to reallocate the transcript funds to the Kisseberths as debtors, rather than to the bankruptcy estate. Henderson then filed this appeal.

## II. ANALYSIS

**A. The bankruptcy court did not err in exercising jurisdiction over all of the fees that Henderson collected, including the transcript funds claimed by Bonnie Kisseberth**

Henderson contends that the bankruptcy court did not have jurisdiction to order the disgorgement of the fees he collected from the transcript funds claimed by Bonnie Kisseberth. The bankruptcy court asserted its jurisdiction over the transcript funds based on its *in rem* jurisdiction over the debtors' estate. Included in the Kisseberths' bankruptcy estate are their assets as of the time the petition was filed. 11 U.S.C. § 541 (defining the bankruptcy estate). But the transcript funds, as the subject of a postpetition loan between the debtors and third parties, are not part of the bankruptcy estate. *Id.* The bankruptcy court therefore relied on an inapplicable basis for its jurisdiction over these funds.

Nevertheless, the bankruptcy court was empowered to order disgorgement of the transcript funds based on its jurisdiction over attorney fees charged "in connection with" the bankruptcy case. *See* 11 U.S.C. § 329 (providing that the bankruptcy court may order disgorgement of any excessive fees charged "in connection with" a bankruptcy case). "[A]ny payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the

as a sanction against the debtor's counsel for failing to disclose fees). Disgorgement may be proper even though the failure to disclose resulted, as Henderson claims, from negligence or inadvertence. *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or inadvertent failure to disclose fully relevant information [in a Rule 2016 statement] may result in a denial of all requested fees.").

As the district court concluded, Henderson's argument that the extent of the disgorgement is excessive "disregards the critical importance of § 329(a) and Rule 2016(b) to the Bankruptcy Court as it exercises its jurisdiction," including reducing "the likelihood of subsequent inquiry, and further and fragmented proceedings." Given, in the words of the district court, "the importance of the fee disclosure requirement, the extent to which that requirement was almost totally disregarded by an experienced bankruptcy practitioner, and the need to compel future compliance on his part and on the part of all counsel appearing in bankruptcy court," we find no error by the district court in sustaining the bankruptcy court's disgorgement order.

**D. The district court did not err in reallocating the transcript funds to the Kisseberths**

The bankruptcy court allocated the transcript funds to the bankruptcy estate based upon its equitable power under 11 U.S.C. § 105(a) to issue any judgment that is "necessary or appropriate to carry out the provisions of this title." In turn, the district court reversed the bankruptcy court's judgment and exercised its own equitable power in reallocating the transcript funds to the Kisseberths.

A lower court's equitable judgment will be overturned only if we find an abuse of discretion. *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993) (reviewing the bankruptcy court's exercise of its equitable powers under an abuse of discretion standard). We will find an abuse of discretion only upon a "definite and firm conviction that the district court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

Under Rule 2017, the bankruptcy court may determine, after notice and a hearing, that any portion of an attorney's fee for work in a bankruptcy case is excessive.

Even if the bankruptcy court had not determined that Henderson's fees were excessive, however, the disgorgement would still be within the court's discretion in light of the § 329 and Rule 2016(b) disclosure requirements. *In re Lewis*, 113 F.3d 1040, 1045 (9th Cir. 1997) (rejecting the argument that a bankruptcy court's disgorgement order, based in part upon violations of the § 329 and Rule 2016(b) disclosure requirements, should be reversed because the court made no findings of excessiveness). An attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments. *In re Plaza Hotel Corp.*, 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990). In the present case, Henderson submitted a compensation statement that disclosed the $1,500 retainer that he had been paid, but not the $5,420 in prepetition legal fees that he had billed. This disclosure violated § 329 because it was incomplete. Henderson also billed the Kisseberths for over $8,000 in legal fees during the course of the bankruptcy proceedings, but he failed to file any supplemental fee disclosures as required by Bankruptcy Rule 2016(b). Even though Henderson might not have intended to deceive either the court or the Kisseberths, the bankruptcy court did not abuse its discretion in heavily sanctioning Henderson for these violations.

The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees are designed to protect both creditors and the debtor against overreaching attorneys. *In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989). To ensure such protection, bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules. *In re Downs*, 103 F.3d 472, 479 (6th Cir. 1996) (denying all compensation to an attorney who disregarded his obligation to disclose his fee arrangement under § 329 and Rule 2016); *Matter of Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995) (concluding that a bankruptcy court may order disgorgement

bankruptcy court notwithstanding the source of payment." *In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989) (affirming the bankruptcy court's jurisdiction to order disgorgement of attorney fees collected from a source that was exempt from the bankruptcy estate). Because Henderson used the insurance proceeds to compensate himself for services rendered "in connection with" the Kisseberths' bankruptcy case, we conclude that the bankruptcy court had jurisdiction over the proper disposition of these proceeds.

## B.   In exercising jurisdiction over the transcript funds, the bankruptcy court did not deny Henderson the due process of law

Henderson also contends that the bankruptcy court violated his Fifth Amendment right to due process of law in ordering disgorgement of the transcript funds. The bankruptcy court denied him an evidentiary hearing, according to Henderson, by exercising jurisdiction over the transcript funds after it had disavowed such jurisdiction at a pretrial conference. This argument fails because the bankruptcy court had placed Henderson on notice that it intended to exercise jurisdiction over the full amount of Henderson's fees.

The disavowal of jurisdiction allegedly occurred when, during the pretrial conference, the bankruptcy court made statements questioning its ability to assert *in personam* jurisdiction over Bonnie Kisseberth. Regardless of these statements, Henderson had reasonable notice that his entire fee was at issue in the bankruptcy proceeding. The bankruptcy court, at the same pretrial conference, repeatedly expressed the view that it had the authority to determine the amount of fees to be paid for services in any and all bankruptcy proceedings. In addition, Henderson submitted all issues relating to his fees to the bankruptcy court by filing his application for fees with the court. By including the transcript funds in the amount of collected fees for which he sought approval, Henderson was on notice that the bankruptcy court would examine the propriety of his receipt and retention of those funds.

**C.    The order directing Henderson to disgorge $9,600.00 of the $11,887.98 in fees that he had collected, as well as forfeit $3,212.02 in unpaid fees, was not an abuse of discretion**

*1.   The bankruptcy court's finding of excessiveness does not, by itself, support the amount of disgorgement ordered*

The bankruptcy court's finding of excessive attorney fees is a mixed question of law and fact. *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986) (holding that a finding of excessive attorney fees involves mixed questions of law and fact, such as "whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel."). We review mixed questions of fact and law de novo. *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995).

Henderson's fees were excessive, the bankruptcy court concluded, because he worked on matters that he had not been asked or authorized to address, and the hours that he spent on the bankruptcy proceeding were unnecessary given the relative lack of complexity of the Kisseberths' case. These findings are not erroneous in light of the facts set forth in Part I.A. above.

The bankruptcy court, however, did not explicitly set forth the degree to which Henderson's fees were excessive, and the amount of excessiveness does not appear to approach the amount of disgorgement ordered. Because § 329 states that the amount of any excessive fees should be disgorged "to the extent excessive," the bankruptcy court's finding of excessiveness does not by itself support the heavy sanction imposed.

*2.   Henderson's failure to disclose his fees justifies the amount of disgorgement regardless of the degree to which his fees were excessive*

A court must exercise its power to levy sanctions "with restraint and discretion." *In re Downs*, 103 F.3d 474, 478 (6th Cir. 1996). In reviewing a bankruptcy court's decision concerning the proper amount of attorney fees, we will not set aside its determination unless the court abused its discretion. *Id.* We will find an abuse of discretion only upon a "definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). Henderson argues that the bankruptcy court abused its discretion in awarding him only $2,287.98 in attorney fees out of his total bill of $15,100.00, because the extent of the disgorgement is far beyond the extent to which his fees might have been excessive, and his violations of § 329 of the United States Bankruptcy Code and Bankruptcy Rule 2016(b) were technical and inadvertent.

Section 329 of the Bankruptcy Code provides as follows:

(a)  Any attorney representing a debtor in a case under this title . . . shall file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b)  If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to— (1) the estate . . .; or (2) the entity that made such payment.

Section 329 is implemented by Bankruptcy Rules 2016(b) and 2017. Rule 2016(b) provides in pertinent part: "Every attorney for a debtor . . . shall file and transmit to the United States trustee . . . the statement required by § 329 of the Code . . . . A supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed."