**In re Alex F. VALLADARES, Debtor.**

**No. 08–13450–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

July 15, 2009.

Brian S. Behar, Esq, Robert J. Edwards, Esq, Aventura, FL, for Debtor.

Gary M. Freedman, Esq, Joel L. Tabas, Esq, Scott N. Brown, Esq, Miami, FL, for Trustee.

Johanna Armengol, Office of the U.S. Trustee, Miami, FL, for U.S. Trustee.

*MEMORANDUM DECISION AND ORDER GRANTING THE UNITED STATES TRUSTEE'S MOTION TO DISGORGE FEES AND FOR SANCTIONS FOR VIOLATIONS OF 11 U.S.C. § 329, § 330, AND BANKRUPTCY RULE 2016*

A. JAY CRISTOL, Chief Judge Emeritus.

THIS MATTER came before the Court on June 18, 2009, upon the Debtor's Motion For Consideration of Amended 2016 Statement (DE # 210) and the United States Trustee's (a) Response To Debtor's Motion For Consideration of Amended 2016 Statement, and (b) Motion to Disgorge Fees and For Sanctions For Violations of 11 U.S.C. § 329, § 330, and Bankruptcy Rule 2016 (DE # 224 and # 225). The Court, hearing arguments of Debtor's counsel, counsel for the United States Trustee, and counsel for the Chapter 11 Trustee, directed the parties to submit competing memoranda decisions and proposed orders. The Court, having considered the parties' post-hearing submissions and taking judicial notice of the Court file, makes the following findings of fact and conclusions of law:

### *FACTUAL AND PROCEDURAL BACKGROUND*

1. Alex F. Valladares (the "Debtor") filed a voluntary petition under chapter 11 of the U.S. Bankruptcy Code on March 24, 2008. The Debtor has ownership interests in approximately 25 corporations that own and operate separate Lady of America Fitness Center Franchises (the "LOA Entities"), and in three corporations that provide management services to the LOA Entities and own and operate commercial property (collectively the "Debtor's Corporations").

2. Schedule B to the Debtor's petition filed April 28, 2008 (DE # 23), reflects the

Debtor owns 100% of 15 of the Debtor's Corporations. Amended Schedule B to the Debtor's Petition filed October 24, 2008 (DE # 92), reflects the Debtor owns 100% of 20 of the Debtor Corporations.

3. On April 8, 2008, the Debtor filed his Motion for Authority to Retain Attorney (the "Retention Motion") (DE # 13) seeking to retain Brian S. Behar ("Behar"), of the law firm of Behar, Gutt & Glazer, P.A. (collectively "BG & G") as bankruptcy counsel pursuant to 11 U.S.C. § 330. By Order dated May 23, 2009, this Court authorized BG & G's retention pursuant to 11 U.S.C. § 330 (DE # 39) (the "Retention Order").

4. The Affidavit of Proposed Attorney for Debtor in Possession attached to the Retention Motion and signed by Behar (DE # 13–1) states that neither he nor BG & G will accept fees from any other party "except the debtor-in-possession." See paragraph 4.

5. BG & G's 2016 Statement filed on April 30, 2008 (the "Original 2016") (DE # 30), identifies the Debtor as the source for compensation "and none other". See paragraph 6.

6. On January 22, 2009, this Court entered its Order Directing the Appointment of Chapter 11 Trustee (DE # 160), and on January 26, 2009, Barry Mukamal (the "Trustee") was appointed chapter 11 Trustee (DE # 164).

7. During a review of the books and records of the Debtor's Corporations, the Trustee came across multiple transfers made to BG & G's bank account. Upon inquiry, Behar confirmed that these were transfers made for compensation of BG & G's fees. The Trustee requested that BG & G file the required disclosures to bring the matter before this Court.

8. On May 15, 2009, BG & G filed its Amended Rule 2016 Statement (the "Amended 2016") (DE # 209) identifying 38 post petition payments received by BG & G for services as Debtor's counsel made by 18 of the Debtor's Corporations (the "Payor Entities") in the total amount of $120,000 between October 3, 2008 through April 28, 2009.

9. Pursuant to Amended Schedule B, the Debtor owns 100% of nine of the Payor Entities, and owns a controlling interest of 75% in one Payor Entity.[1]

### *ISSUES*

10. The UST argues that BG & G received and accepted $ 120,000 for payment of its fees and did not timely disclose this information to the Court by amending its 2016 Statement, thereby violating the provisions of 11 U.S.C. § 329(a) and Bankruptcy Rule of Procedure 2016.

11. The UST further argues that BG & G received and accepted payments from the Payor Entities prior to filing a fee application pursuant to 11 U.S.C. § 330 in violation of the Retention Order.

---

1. The Debtor owns 100% of the following Payor Entities: 1) Intercontinental Management & Consulting Group, Inc.; 2) Arecibo Fitness Management, Inc.; 3) Bayamon Fitness Management, Inc.; 4) Dorado Fitness Management, Inc.; 5) Guaynabo Fitness Management, Inc.; 6) Rexville Fitness Management, Inc.; 7) Vega Baja Fitness Management, Inc.; 8) West Flagler Consulting Services, Inc.; and 9) Yauco Fitness Management, Inc. (Paseos). In addition, the Debtor has a controlling interest in Equity Management & Consulting, Inc.

The Debtor's ownership interest in the remaining eight Payor Entities is unclear as the names of the corporations on the Amended 2016 do not completely match the names of the corporations on Amended Schedule B. However, there is apparently no dispute that all of the Payor Entities are part of the larger group of the Debtor's Corporations.

12. BG & G does not dispute that it did not comply with the disclosure requirements prescribed by 11 U.S.C. § 329(a) and Rule 2016. However, it argues that its failure to do so was inadvertent and unintentional. In addition, BG & G submits mitigating circumstances that this Court should consider in either denying sanctions or in substantially reducing same. The UST rebuts BG & G's submissions as not having a mitigating effect and seeks disgorgement of the payments received, and denial of BG & G's fees.

### LAW AND ANALYSIS

A. *BG & G Failed To Timely Comply With 11 U.S.C. § 329(a) and Bankruptcy Rule 2016.*

■ Court oversight over compensation agreements between a Debtor and counsel is governed by 11 U.S.C. § 329(a). Section 329(a) states as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with a court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Bankruptcy Rule 2016 provides for the procedure a party must follow in order to comply with Section 329 and sets forth the time by which the Section 329 statement should be filed. Rule 2016(b) states in relevant part as follows:

(b) DISCLOSURE OF COMPENSATION PAID OR PROMISED TO ATTORNEY FOR DEBTOR. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code. . . . A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

BG & G's continued acceptance of post petition payments without disclosure within the time frame dictated by Rule 2016 is a violation of Section 329. The Original 2016 affirmatively stated that the source of payments to BG & G would be from the Debtor and "none other". BG & G was under a duty to disclose the transfers within 15 days of receipt and failed to do so. Consequently, this Court finds that BG & G has violated Section 329(a) by not disclosing to this Court and to the U.S. Trustee the payments it received by the Payor Entities within the time frame dictated by Rule 2016.

B. *BG & G Violated the Retention Order By Not Filing Fee Applications Pursuant to 11 U.S.C. § 330.*

■ The Order approving BG & G's retention unequivocally provides that the retention was pursuant to 11 U.S.C. § 330, meaning, BG & G would be compensated only after notice and a hearing and only after this Court awards such compensation. BG & G has received substantial funds in payment of its fees, the first transfers date back to October 2008, over seven months before BG & G filed its Amended 2016 and then apparently only because the Trustee discovered the undisclosed payments and insisted that BG & G disclose the transfers to this Court. The fact that the payments were made by the Payor Entities does not change BG & G's duties under Section 330. This Court has

held that an attorney representing a debtor must file fee applications for payment of his fees pursuant to Section 330 even if fees are paid by a third party. *In re Key Largo Land, Inc.*, 158 B.R. 883, 884 (Bankr.S.D.Fla.1993); *See also In re Furniture Corporation of America*, 34 B.R. 46, 47 (Bankr.S.D.Fla.1983) (fee application must be filed and reviewed by the Court notwithstanding source of payment).

In its Amended 2016 BG & G states that "[it] always understood that its fees for services rendered ... would ultimately be subject to fee application and Court approval." BG & G is not new to the bankruptcy process, it knows the Bankruptcy Code. BG & G knows that, absent an order from this Court allowing an alternative fee payment arrangement pursuant to 11 U.S.C. § 331 and Rule 2016, such as the procedure for allowing monthly payments of interim fees outlined in our local Rule 2016–1(B)(3)(b), fee applications must be filed and set for hearing, and fees must be awarded, prior to any payment. Moreover, BG & G knew or should have known that a delay of seven months to bring this matter to the attention of the Court is unreasonable and unacceptable. Consequently the Court finds that BG & G violated Section 330 by accepting payment of attorneys fees on behalf of the Debtor without filing fee applications and without seeking approval of an award of fees by this Court after notice and a hearing.

C. *BG & G's Failure To Disclose Payments Warrants Sanctions.*

Courts may order disgorgement, deny compensation, or impose other sanctions for failure to timely or properly disclose fees. *In re Geller*, 2009 WL 361379 (Bankr.M.D.Fla.) (citing *In re Whaley*, 282 B.R. 38, 41 (Bankr.M.D.Fla.2002)). The importance of complying with the disclosure requirements of the Bankruptcy Code

has been expressed by many courts on a myriad of bases:

a. *Debtor and creditor protection*— "Section 329 was enacted in response to the concern that payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." *In re Key Largo Land, Inc.*, 158 B.R. 883, 884 (Bankr.S.D.Fla.1993) citing *In re Land*, 116 B.R. 798 (D.Colo.1990) (debtor's counsel required to file fee applications pursuant to Section 330 even if fees are paid by a third party);

b. *Integrity*—"The policy requiring timely disclosure ... under § 329 and Rule 2016(b) is central to the integrity of the bankruptcy process and [is] not to be taken lightly nor easily dismissed...." *In re TJN, Inc.*, 194 B.R. 400, 403 (Bankr. D.S.C.1996) (counsel's compensation reduced for failure to comply with Section 329 and Rule 2016);

c. *Efficacy*—"Voluntary compliance with the disclosure obligation is essential to maintain the efficacy of our bankruptcy system." *Mapother & Mapother v. Cooper (In re Downs)*, 103 F.3d 472, 480–482 (6th Cir.1996) (Court of Appeals reversed District Court in affirming the Bankruptcy Court's ruling which ordered partial disgorgement of counsel's fees for failure to comply with Section 330 and Rule 2016; Court of Appeals remanded to Bankruptcy Court for disgorgement of fees *in toto* );

d. *Public confidence*—"Strict adherence to the Bankruptcy Code shall be maintained and deficiencies in disclosure will not be tolerated if the public confidence in the Bankruptcy Court system is to be preserved." *In re Century Plaza Associates*, 154 B.R. 349, 353 (Bankr. S.D.Fla.1992) (court denied counsel's appli-

cation for additional fees for failure to disclose previously paid fees).

■ Courts must trust attorneys, as officers of the Court, to voluntarily comply with disclosure requirements. "Attorneys who breach that trust by failing to disclose compensation should suffer strict and quick consequences that could include the imposition of sanctions or the disgorgement of all fees paid in the case." *In re Whaley,* 282 B.R. 38, 41 (Bankr.M.D.Fla. 2002); *In re Hackney,* 347 B.R. 432, 443 (Bankr.M.D.Fla.2006) (disgorgement of fees for counsel's failure to comply with Section 329); *See also, In re Laxague,* 981 F.2d 1258, 1992 WL 389251 (9th Cir.1992) (affirmance of bankruptcy court's order disgorging fees for counsel's failure to make Section 329 disclosures).

■■ "Congress provided not only for extensive Court, trustee, and creditor scrutiny of the compensation to be paid to attorneys ... but also for broad discretion in imposing sanctions for violations of these strictures." *In re Redding,* 263 B.R. 874, 878 (8th Cir.BAP 2001) (affirming Bankruptcy Court's order of disgorgement of fees for counsel's failure to comply with Section 329). Furthermore, a belated disclosure is insufficient to cure the failure to timely disclose fees received. "If every attorney waited until he or she is caught to file a statement of disclosure, the entire concept of mandatory disclosure would become a farce." *Whaley,* 282 B.R. at 42.

BG & G does not dispute that this Court has the authority to impose sanctions, however, it urges this Court to exercise its discretion in doing so by taking into account certain circumstances which it claims should have a mitigating effect on the imposition of any sanction. The Court has reviewed BG & G's alleged mitigating circumstances and finds that such facts do not persuade the Court to lessen the sanctions against it.

### D. *Alleged Mitigating Circumstances*

#### 1. *Inadvertence Was Not Reasonable.*

■ There is no dispute, and in fact BG & G acknowledges that it failed to comply with the requirements of Section 329(a), however, submits that the violation of Section 329 and Rule 2016 was inadvertent and unintentional as the payment came from third parties and BG & G did not believe that disclosure was needed. The UST refutes BG & G's justifications and asserts that BG & G knew, or should have known that disclosure was necessary. The plain language of Section 329(a) is clear, it states that the compensation paid and "the source of such compensation" must be disclosed. Section 329(a) contemplates disclosure of payment of fees regardless of who pays them.

Also, Amended Schedule B, filed under penalty of perjury, identifies Debtor's ownership interest in the Payor Entities, which include being 100% owner of nine of the 18 Payor Entities, and having a controlling interest in at least one other. Because BG & G filed Amended Schedule B on behalf of the Debtor it cannot now claim ignorance as to the percentage of the Debtor's ownership interest in the various Payor Entities. BG & G assertions that it did not "believe" that they had a duty to disclose, particularly with respect to the 9 Payor Entities that are solely and wholly owned by the Debtor, is disingenuous and not believable.

To further erode BG & G's position that the failure to disclose was inadvertent, the Court notes that on February 9, 2009, this Court entered its Order Granting Trustee's Agreed Ex Parte Motion For Authority to (1) Establish Interim Cash Management Procedures and (2) Temporarily Allow Debtor Continued Use of DIP Accounts Under Trustee's Supervision Nunc

Pro Tunc to January 26, 2009 (the "Cash Management Order") (DE # 183). The Cash Management Order directs the Debtor to immediately turn over all of the Debtor's receipts to the Trustee and further directs the Debtor to continue to make corporate distributions from Debtor's Corporations to the Debtor in an amount consistent with past practice, and to turn said distributions over to the Trustee.

BG & G should have known that the funds it received in payment of its fees could be deemed corporate distributions to the Debtor and consequently, pursuant to the Cash Management Order, they could belong to the estate. Even assuming, *arguendo,* that the funds did not come out of the Debtor's corporate distribution, the perception of impropriety would prompt any experienced and cautious practitioner to disclose, even if in an overabundance of caution.

The Court does not find BG & G's inaction to be a reasonable mistake, especially given the level of experience of BG & G in bankruptcy matters and given its knowledge of the Debtor's ownership interest in the Payor Entities.

### 2. *Cooperation Was Not Sufficient.*

■ BG & G argues that once the Trustee notified him of the error, BG & G fully cooperated in bringing it to the attention of this Court. At the hearing, counsel for the Trustee advised the Court that he insisted for over a week that BG & G disclose the payments. When the Trustee indicated he would bring the matter before the Court himself, BG & G finally made its disclosures. BG & G's actions are not considered cooperative and voluntary under those circumstances. The disclosure

filed was prompted more by coercion and the threat that this Court would find out from a third party, than by a sense of duty or obligation.

### 3. *Untimeliness was Egregious.*

■ BG & G also argues that it was only two days late in disclosing the payments received on April 28, 2009 in the total amount of $ 15,000.[2] The Court does not consider this fact to have a mitigating effect on BG & G's violation of its duties. First $15,000 is only a small percentage of the total fees received ($120,000). The bulk of the payments, in the total amount of $95,000 were made in October and December of 2008 and between January and March, 2009, and disclosure of same was grossly untimely. Second, if it were not for the Trustee demanding that the disclosures be made, there is no evidence that suggests BG & G would have disclosed them.

### 4. *No Extraordinary Diligence of Counsel.*

■ BG & G finally argues that it has moved this case forward towards confirmation by filing a plan of reorganization. The Court does not find this to have a mitigating effect. The plan was filed only 2 days prior to this hearing. The Court notes, however, that there was no disclosure statement filed along with the plan, effectively failing to truly move this case forward toward any conclusion.

The Court finds that the record in this case is sufficient to show that BG & G has repeatedly and willingly violated the disclosure requirements of the Bankruptcy Code and that this Court should impose sanctions.

---

**2.** BG & G received 20 separate checks on April 28, 2009 from several of the Payor Enti-

ties totaling $15,000.

F. *Improper Fees Should Be Disgorged to the Estate.*

The UST argues that this Court should order the disgorgement of the fees for two reasons. First, allowing BG & G to keep the fees places it in a better position *vis a vis* other administrative claimants in this case. The Trustee has not been compensated, neither has his counsel. BG & G's failure to comply with the Code has created an inequity that should not be allowed.

Second, the UST argues that we do not know what interest or claims the Debtor had in the funds at the time they reached BG & G's bank account and, absent that knowledge, fees should be disgorged to the Trustee. The Court agrees. Debtor's Amended Schedule B filed under penalty of perjury, identifies Debtor's ownership interest in the Payor Entities, which include being 100% owner of 9 of the seventeen Payor Entities, and having a controlling interest in at least one other. The UST argues that the payments made by the Payor Entities could very well be considered corporate distributions or dividends to the Debtor which are assets of the estate. "Where a wholly owned and solvent [corporation] of a Chapter 11 debtor secretly pays a professional employed by the debtor for services rendered to the debtor in its capacity as debtor in possession, the property transferred is, for purposes of § 541(a), property of the estate at the moment of the transfer." *In re W.T. Mayfield Sons Trucking Co., Inc.,* 225 B.R. 818, 827 (Bankr.N.D.Ga.1998) (disgorgement of funds to the estate due to counsel's failure to make Section 329(a) disclosures, when funds were paid by Debtor's wholly owned subsidiary). The Court cannot with any degree of certainty conclude that the payments to BG & G were not corporate distributions to the Debtor and consequently finds that the payments to BG & G should be disgorged.

For the reasons set forth herein, it is

**ORDERED AND ADJUDGED** that the UST's Motion to Disgorge Fees is **GRANTED** and BG & G shall immediately remit to the Trustee the full amount of attorneys fees paid in violation of this Court's orders and 11 U.S.C. §§ 329 and 330, to wit, $120,000 in fees. BG & G is directed to file a fee application and schedule same for hearing pursuant to 11 U.S.C. § 330, and the Court will consider and rule on the issue of sanctions at said hearing.