### In re The HARRIS AGENCY, LLC, Debtor.

### No. 09–10384 (JKF).

United States Bankruptcy Court, E.D. Pennsylvania.

May 10, 2010.

---

Paul J. Winterhalter, Law Offices of Paul J. Winterhalter, P.C., Philadelphia, PA, for Debtor.

United States Trustee, Philadelphia, PA.

## *ORDER*

JEAN K. FITZSIMON, Bankruptcy Judge.

This 10th day of May, 2010, upon consideration of the United States Trustee's Motion to Disqualify Debtor's Counsel and for Disgorgement of Fees (the "Motion");

**AND** a hearing on the Motion having been held on March 10, 2010 (the "March Hearing");

**AND** the Debtor having filed for relief under Chapter 11 of the Bankruptcy Code on January 20, 2009;

**AND** the Law Offices of Paul J. Winterhalter, P.C. ("Winterhalter") having filed on January 20, 2009 both an Application for Employment of Counsel (the "Application") pursuant to 11 U.S.C. § 327[1] and a Verified Statement in Support of the Application (the "Verified Statement") pursuant to Bankruptcy Rule 2014[2] (docket entry no. 6);

**AND** Winterhalter having sworn in the Verified Statement that "neither I, nor any member of my firm has any connection with any party in interest, the respective attorneys, or accountants ..." (docket entry 6–1, p. 1);

**AND** the Court having "conditionally" issued an Order on January 22, 2009 approving Winterhalter's Application for employment, "with the Law Firm to be paid at such compensation as the Court shall allow, only after approval of an Application...." and noting that "Counsel promptly shall file a disclosure of any retainer received and the rates proposed for this engagement" (the "Retention Order," docket entry no. 11);

**AND** on January 23, 2009, Winterhalter having filed a Disclosure of Compensation pursuant to 11 U.S.C. § 329(a)[3] and Bankruptcy Rule 2016(b)[4] (the "2016 Statement"), disclosing that it agreed to accept $50,000 for legal services for the Debtor,

---

1. 11 U.S.C. § 327(a) states, in relevant portion, "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

2. Bankruptcy Rule 2014 states, in relevant portion that an application pursuant to section 327 (i.e. an application to employ a Debtor's attorney) shall state "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants.... The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."

3. 11 U.S.C. § 329(a) states, in relevant portion, "any attorney representing a debtor in a case under this title ... whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."

4. Federal Rule of Bankruptcy Procedure 2016(b) states, in relevant portion, "(e)very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States Trustee within 14 days after the order for relief ... the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney.... A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed."

that it received $23,200 prior to the filing of the statement, and that the $23,200 received had been paid by the Debtor and Alliance Ins. Services, LLC ("Alliance") (docket entry no. 12). The 2016 Statement also stated that Alliance or its affiliates (together, the "Affiliates") would pay the balance owed to Winterhalter. (*Id.*);

**AND** the Debtor being owned by Nevada Investment Partners ("NIP"), which is composed of Randall Siko, Eric Bossard, Debra Agnew and Fred Milbert (the "Guarantors") (Disclosure Statement at 6, docket entry no. 93);

**AND** the Guarantors, with the exception of Mr. Milbert, having agreed to guarantee Winterhalter's fees in this case (transcript of March Hearing, docket entry no. 210—hereinafter "Tr."—at 32);

**AND** Alliance being controlled by James Agnew, who is President and CEO, and its Board of Directors including Randall Siko, Eric Bossard, and Linda Agnew (*Motion*, p. 3; Exhibit 1 to Winterhalter's Response, docket entry no. 196);

**AND** Archway Insurance Services, LLC ("Archway"), a company related to the Debtor and Alliance, being composed of Frederick Milbert, James Agnew, Eric Bossard and Randall Siko and managed by James Agnew (Motion, p. 3);

**AND** Archway, Alliance, and the Debtor being interrelated in that Alliance writes insurance coverage, Archway secures the coverage between the carrier and the retailer, and the Debtor provides the services to the insured (testimony of H. James Agnew, Tr. at 24);

**AND** Alliance being listed as a creditor holding an unsecured, nonpriority claim in the amount of $445,500 (docket entry no. 38, p. 9);[5]

**AND** Archway being owed approximately $1.3 million by the Debtor for a prepetition loan that was disclosed during the March Hearing (Tr. at 25–7; 57);

**AND** Alliance being a co-guarantor on a loan with the Debtor (Tr. at 47);

**AND** Mr. Agnew having testified that the Affiliates expected the Debtor to repay any payments made on its behalf to Winterhalter for fees in connection to this bankruptcy case (Tr. at 58–9);

**AND** the Plan proposed by the Debtor[6] on September 8, 2009 calling for Archway to contribute $110,000 in new equity in exchange for receiving 50% of the equity interests in the reorganized debtor (Disclosure Statement at 10; Plan of Reorganization (the "Plan"), docket entry no. 92 at p. 14). Upon completion of the Plan, Randall Siko, Eric Bossard and James Agnew were to act as officers and directors of the Debtor (Disclosure Statement, p. 21; Plan, p. 14);

**AND** Winterhalter having filed a First Application for Compensation (the "Fee Application") on January 7, 2010, seeking payment of $113,515.75 in fees[7] for services rendered from January 20, 2009 through December 31, 2009 (docket entry no. 158);

**AND** Objections to the Fee Application having been made due, among other reasons, to the fact that Winterhalter failed to disclose that it received post-petition payments from both Archway and Alliance prior to court approval (*see* docket entries nos. 176 and 177) (the "Objections");

---

5. The creditor is incorrectly listed as "Alliance Insurance Services, LLC" on Schedule F. According to Winterhalter's Response, the proper name of the creditor should be "Archway Insurance Services, LLC." (Docket entry no. 196 at 6, n.2).

6. The Plan was withdrawn on November 4, 2009. Docket entry no. 117.

7. The Fee Application also sought $2,636.92 in expenses.

AND following the Objections, on January 28, 2010, Winterhalter having filed an Amended and Supplemental Verified Statement Further Supporting First Interim Application for Professional Compensation Sought by the Law Offices of Paul J. Winterhalter, P.C. (the "Amended Verified Statement") (docket entry no. 178), disclosing for the first time that it had received total payments of $77,893 from Archway and Alliance. Winterhalter asserts in the Amended Verified Statement that it had a "mistaken belief" that Bankruptcy Rule 2016(a)[8] required only disclosure of post-petition payments received from the debtor;

AND the United States Trustee ("UST") having filed a Motion to Disqualify Debtor's Counsel and for Disgorgement of Fees (the "Motion"), asserting, among other things, that Winterhalter should be disqualified and forced to disgorge fees because it failed to timely and fully disclose the source of its fee arrangements pursuant to section 327(a) and Rule 2016(a) (docket entry no. 188, p. 5). In addition, the UST asserts that Winterhalter filed the Amended Verified Statement only because the undisclosed payments from third parties were discovered (Motion, p. 7);

AND the Motion further alleging (pgs. 6–7) that Winterhalter improperly accepted payment of fees from third parties without prior approval of the Court as mandated pursuant to 11 U.S.C. § 331[9]

and Court Order of January 22, 2009 (docket entry no. 11);

AND Winterhalter having filed a Response to the Motion (the "Response"), contending that the relief sought by the UST is supported by neither the facts nor the law, that the Verified Statement was sufficient, that it was its belief that the Fee Application need only disclose payments from the Debtor, and that no conflict of interest arose from the receipt of payments from Alliance and Archway (docket entry no. 196 at (for example) 8, 10) or from Archway's position as a funding source for the Plan;[10]

AND following the March Hearing, the parties were permitted to and did submit supplemental briefs (docket entries nos. 206 and 207);

### Alleged Failure to Disclose Payments from Third Parties

 AND it being settled that "under section 329 and Bankruptcy Rule 2016(b) [an attorney's disclosure statement] must disclose the source of ... compensation, even if the source is not the debtor but a third party entity." 3 *Collier on Bankruptcy* 329.03 (15th ed. 2009) (further noting that "disclosure under Rule 2016(b) must be precise and complete. All payments or agreements to pay ... must be fully disclosed regardless of the source of payment and its purpose." *Id.* at Volume 9; 2016.20);

---

**8.** Federal Rule of Bankruptcy Procedure Rule 2016(a) states, in relevant portion, "[a]n application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered in any capacity whatsoever in connection with the case, the *source* of the compensation so paid or promised...." (emphasis added).

**9.** 11 U.S.C. § 331 states, in relevant portion, "a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than

once every 120 days after an order for relief in a case under this title for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement."

**10.** A Response to Winterhalter's Response was filed by interested party Fredick I. Milbert. Docket entry no. 197.

■ **AND** the duty to disclose pursuant to Rule 2016 being a continuing one; if a debtor's attorney subsequently receives funds, he must supplement the prior disclosure. *In re Berg,* 356 B.R. 378, 382 (Bankr.E.D.Pa.2006); *see also In re All Cases of Musher,* 387 B.R. 669 (Bankr. W.D.Pa.2008); 9 *Collier on Bankruptcy* 2016.17 (15th ed. 2009) ("If a debtor's attorney subsequently receives funds, the attorney must make the required disclosure by supplementing any prior disclosure");

**AND** although it being the case that Winterhalter's disclosures of third party payments came only after a court order and a party's objection,[11] it nonetheless remains the fact that Winterhalter disclosed the sources of these payments in the 2016 Statement and Amended Verified Statement, and the Court determines that Winterhalter did so without any intention of hiding this information or prolonged delay;

■ **AND** while it no doubt being the better practice to disclose immediately payments from any and all sources, including from third parties, particularly where such parties have a connection to the Debtor and may create a conflict of interest, the Court finds that Winterhalter's delay with regard to the disclosure of this information did not cause harm to the Debtor or its creditors;

■ **AND** it being "well established that bankruptcy courts have broad discretion to determine the appropriate response to an attorney's transgression of the compensation rules." *In re Jensen,* 2008 WL 2405023, at *4 (Bankr.E.D.Pa. June 13, 2008);

**AND** the Court determining that Mr. Winterhalter has acted in good faith with regard to the disclosure of receiving third-party compensation and, while not always acting in complete conformity with the Code and Rules, has sought to timely rectify his actions and clarify his positions and should not be sanctioned with regard to this portion of the matter;

### Did Winterhalter Need to File a Fee Application for Receipt of the Third Party Payments?

■ **AND** it being unsettled whether professionals who receive payment from non-debtor sources need to file fee applications pursuant to 11 U.S.C. § 330,[12] *compare In re Valladares,* 415 B.R. 617 (Bankr.S.D.Fla.2009) (holding that attorney had violated section 330 by failing to file a fee application after accepting fees from a third party) *with David and Hagner, P.C. v. DHP, Inc.,* 171 B.R. 429 (D.D.C.1994) (holding that a firm is not required to file a fee application pursuant to 11 U.S.C. § 330 when it is paid by a third party) and *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989 (Bankr. N.D.Ill.1990) (same);

**AND** the Third Circuit stating that "[i]n the case of compensation which is to come from some *non*estate source, the determination would be made solely under § 329,[13]

---

11. Winterhalter contends that it advised the Court and all parties present (including the UST) that it was "receiving regular payments on account of professional fees" from Archway and/or Alliance at a hearing on a Motion to appoint a Chapter 11 Trustee and that no one objected. Response at 9–10. However, the Court recalls no such testimony, and no such disclosure is heard on the recording of the hearing. Docket entry no. 154.

12. Section 330 of the Code states, in relevant portion, "the court may award to ... a professional person employed under section 327 ... reasonable compensation for actual, necessary services rendered...."

13. 11 U.S.C. § 329(a) states, in relevant portion "[a]ny attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney

which empowers the court to review any compensation arrangement between a debtor and an attorney," indicating an agreement that non-debtor compensation does not fall under section 330. *In re Engel,* 124 F.3d 567, 572 (3d Cir.1997);

AND two of the cases relied on by the Trustee being decided under section 329 of the Code, rather than under section 330. *See In re Key Largo Land, Inc.,* 158 B.R. 883 (Bankr.S.D.Fla.1993) and *In re Furniture Corp. Of America,* 34 B.R. 46 (Bankr. S.D.Fla.1983);

■ AND the Court determining that, based on the above authority, there is no duty to file a fee application pursuant to 11 U.S.C. § 330 when an attorney or law firm's fees are being paid by a non-debtor; [14]

AND the Court therefore finding that it is inappropriate to sanction Winterhalter based on his failure to file a fee application for the payments received from third parties;

### Conflict of Interest

AND 11 U.S.C. § 327(a) permitting the debtor to employee counsel who "do not hold or represent an interest adverse to the estate, and that are disinterested persons . . .;"

■ AND the term "adverse interest" in 11 U.S.C. § 327(a) being held to mean "to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a *rival claimant*" or "to possess a predisposition under circumstances that render such a bias against the estate." *In re 22 Acquisition Corp.,* 2004 WL 870813, at *3 (E.D.Pa. March 23, 2004) (emphasis added); *see also In re eToys, Inc.,* 331 B.R. 176, 189 (Bankr.D.Del.2005);

■ AND section 327 further requiring that counsel for the debtor be "disinterested," meaning that he or she "does not have an interest materially adverse to the interest of the estate or of any class of creditors . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason." *In re eToys, Inc.,* 331 B.R. 176, 189 (Bankr.D.Del.2005) (quoting 11 U.S.C. § 101(14)(E));

■ AND courts having been "accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists 'in light of the particular facts of each case.'" *In re Milford Group, Inc.,* 164 B.R. 899, 901 (Bankr.M.D.Pa.1993) (*quoting In re BH & P, Inc.,* 949 F.2d 1300, 1315 (3d Cir.1991));

■ AND factors to be considered in determining whether a conflict of interest exists including "the nature of the disclosure of the conflict made at the time of the

applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."

**14.** While Winterhalter's citation to the law regarding its failure to file a fee application regarding payments from third parties is correct, the Court has also considered the fact that both its Retention Order and the 2016 Statement reference or order that counsel will receive payment only after court approval of an application. Because of the need for transparency in the bankruptcy process and desire to reveal and avoid conflicts of interest, it is the better practice for attorneys to file fee applications with regard to payments from third parties. Indeed, if the Court had been able to determine from the record that Winterhalter knew that the Affiliates expected to be repaid by the Debtor, a fee application clearly would have been required here. Nonetheless, the case law favors Winterhalter on this subject and the Court declines to sanction him for a perceived technical violation.

appointment, whether the interests of the related estates are parallel or conflicting, and the nature of the interdebtor claims made." *In re BH & P, Inc.,* 949 F.2d 1300, 1316–7 (3d Cir.1991) (noting that it is the "obligation" of the party who seeks employment to disclose possible conflicts);

■■■ **AND** the Court determining that Winterhalter's receipt of payments from Archway created an actual conflict of interest, at least by the time the Plan was prepared, due to the following: (1) Archway is an unsecured creditor of the Debtor; (2) Archway was a proposed contributor to the Plan and would have been a 50% owner of the reorganized debtor; (3) Archway is owed approximately $1.3 million by the Debtor on a pre-petition loan; (4) Archway has paid some of Winterhalter's fees; and (5) Mr. Agnew testified that Archway expected to be reimbursed by the Debtor for any payments made to the Debtor's counsel (Tr. at 58);

**AND** the above facts demonstrating—despite the protestations of Mr. Winterhalter to the contrary—that the interests of Debtor's counsel were in conflict between the Debtor and Archway and that the Debtor's and Archway's interests were not aligned. In other words, the interests of the Debtor and Archway were potentially at odds because Archway was owed money from the Debtor (and also expected to be repaid for the funds advanced to Winterhalter) and the proposed Plan had Arch-

way acquiring ownership of the reorganized debtor.[15]

*Sanction*

■■■ **AND** 11 U.S.C. § 327(a) imposing "a per se disqualification ... of any attorney who has an actual conflict of interest." *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 476 (3d Cir.1998); *see also In re Pillowtex, Inc.,* 304 F.3d 246, 251 (3d Cir.2002);

■■■ **AND** the Court having discretion to deny fees to an attorney where it has determined that a conflict of interest exists. 11 U.S.C. § 328(c);[16] *see United States Trustee v. Price Waterhouse,* 19 F.3d 138, 142 (3d Cir.1994) ("if a non-'disinterested' professional person is improperly employed, or if a professional person ceases to be 'disinterested' 'at any time during such professional person's employment,' the court may deny compensation and reimbursement);"

■■■ **AND** bankruptcy courts having "broad and inherent authority" to deny compensation where an attorney fails to comply with the disclosure provisions of § 329, including the power to order disgorgement of fees. *In re Ramelah,* 2008 WL 5411072, *3–4, 2008 Bankr.LEXIS 3652, at *17 (Bankr.E.D.Pa. Oct. 14, 2008);

**AND** the Court being unwilling to grant, as the UST seeks, disgorgement of all fees received or earned by Winterhalter since the inception of this bankruptcy case, as it is unclear when precisely the conflict of

---

15. Mr. Agnew in fact testified at the December 21, 2009 hearing on the Motion to appoint a Chapter 11 Trustee that "Archway could care less about the Harris Agency." December 22, 2009 hearing (docket entry no. 154) (12:23 p.m. on the disk of the hearing). This quote evidences the fact that Archway's interest in this case is its own financial gain, rather than the survival of the Debtor.

16. 11 U.S.C. § 328(c) states, in relevant portion, "the court may deny allowance of com-

pensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."

interest arose, since we do not know if Winterhalter was aware of the expectations of the Affiliates and Guarantors as to repayments, and the Court believing that Winterhalter generally has acted in good faith in accordance with its understanding of the law;

**BUT** the Court having also considered that awarding fees to counsel for the preparation of a Disclosure Statement and Plan where one of the parties in the Plan is a creditor of the Debtor is not proper;

**AND** in considering the above case and statutory law, the facts, the parties' pleadings, and the arguments and testimony made at the March Hearing,

It is hereby **ORDERED** and **DECREED** that:

(1) The Law Offices of Paul J. Winterhalter, P.C. are, as of this date, disqualified from representing the Debtor pursuant to 11 U.S.C. § 327;[17]

(2) The Law Offices of Paul J. Winterhalter, P.C. must assist and cooperate with new counsel appointed by the Debtor in an effort to ensure that the Debtor's new counsel receives all information necessary with regard to the Debtor's bankruptcy case and any related matters;

(3) The Law offices of Paul J. Winterhalter, P.C. may file a fee application pursuant to 11 U.S.C. § 330, and may be compensated as the Court sees fit, for work performed in helping to choose, cooperate with, assist, and inform the Debtor's new counsel (and matters related thereto);

(4) The Law Offices of Paul J. Winterhalter must disgorge fees[18] incurred in connection with preparing the Plan and Disclosure Statement (docket entries 92 and 93) as shall be specifically determined at a hearing regarding the Fee Application to be held after new counsel has prepared and filed a plan and disclosure statement.

---

17. The Court has considered Judge Frank's recent opinion *David Cutler Industries, Ltd. v. Direct Group, Inc. et al. (In re David Cutler Industries, Ltd.)*, 432 B.R. 529 (Bankr.E.D.Pa. 2010), in which Judge Frank declines to grant a Motion to Disqualify Defendant's counsel in four related adversary proceedings. While the issue in *Cutler* is clearly related to the one here, the facts are different in that the law firm in that case had previously represented the Debtor and sought to then represent adversaries of the Debtor. Further, the law discussed and relied on by Judge Frank in holding that the law firm's prior representation did not disqualify it was not the Bankruptcy Code, but Pennsylvania Rule of Professional Conduct 1.9(a). *See e.g.* Slip Opinion at p. 35. Therefore, *Cutler* is not instructive here.

18. The Court declines the UST's request to order disgorgement of fees (i.e. including those paid by third parties) *to the estate. See* Motion at pgs. 7–8. The cases cited by the Trustee to support its argument that the payments from Archway and Alliance should be disgorged to the Debtor are from other circuits and are inapposite. *See e.g. In re W.T. Mayfield Sons Trucking Co. Inc.,* 225 B.R. 818, 825, 827 (Bankr.Ga.1998) (holding that where a "wholly owned and solvent *subsidiary of a Chapter 11 debtor* secretly pays a professional employed by the debtor for the services rendered to the debtor in its capacity as debtor in possession, the property transferred is ... Property of the estate the moment of the transfer" and noting that property of a debtor's wholly owned subsidiary are not assets of the parent company's estate absent "unusual circumstances.") (emphasis added).