**IN RE: HOWARD AVENUE STATION, L.L.C., Debtor.**

**Case No.: 8:12–bk–08821–CPM**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Signed April 28, 2017

W. Bart Meacham, Tampa, FL, Malka Isaak, Ziona Kopelovich, Debt Relief Law Offices of Tampa Bay LLC, New Port Richey, FL, Amy Denton Harris, Barbara A. Hart, Stichter Riedel Blain & Postler, P.A., Tampa, FL, McIntyre, Panzarella, Thanasides, Bringgold & Todd, PL, Temple Terrace, FL, John R. Hightower, Jr., McIntyre Thanasides, Tampa, FL, Stuart

J. Levine, Walters Levine Klingensmith & Thomison, Tampa, FL, Joey M. McCall, Farrell & Patel, P.A., Miami, FL, for Debtor.

J. Steven Wilkes, Nathan A. Wheatley, Office of United States Trustee, Tampa, FL, for U.S Trustee.

## AMENDED [1] ORDER ON MOTION FOR DISGORGEMENT OF FEES

Catherine Peek McEwen, United States Bankruptcy Judge

█ Noncompliance with the Bankruptcy Code's requirements concerning an estate professional's compensation generally merits denial of compensation plus disgorgement of all of compensation already received. However, under the case-by-case approach adopted by the Court here, an exception may be made in the bankruptcy court's discretion based on sufficient mitigating circumstances. This case is a case to which such exception applies.

This contested matter arose from the United States Trustee's Motion for Disgorgement of Fees (the "Motion").[2] The facts are not in dispute, and the parties submitted the matter to the Court for a ruling without a hearing.[3]

---

1. This amends the initial order (Doc. No. 783) to correct minor scrivener's errors, eliminate a fact proffered by the parties that seems to be contradicted by the record, and otherwise refine the text for publication.

2. Doc. No. 713.

3. The United States Trustee submitted a proposed order that includes substantially similar relief as that included in this order. By submitting the proposed order, the United States Trustee is deemed to have certified that the Debtor in Possession's special litigation counsel was in agreement that an order providing disapproval of $1,000.00 in fees may be entered. Because the Court accepted the parties'

resolution, the Court informally cancelled the July 12, 2016, hearing on the Motion. This order is a substantially revised version of the shorter proposed order submitted by the United States Trustee. This order imposes an increased reduction in fees over what the parties originally agreed to because of newly discovered facts concerning special litigation counsel's record of representing fiduciaries in bankruptcy in the past. The increased reduction was negotiated and agreed to by special litigation counsel and counsel for the United States Trustee at a hearing held on August 9, 2016, at which time the substance of this order was read into the record. The Court accepts the parties' resolution for the reasons stated in this order.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(a) and the Standing Order of Reference issued by the United States District Court for the Middle District of Florida. This contested matter is procedurally governed by Rule 9014, Federal Rules of Bankruptcy Procedure.[4] The statutory predicate lies in 11 U.S.C. § 329(a). This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A, B, and O).[5]

## Findings of Fact

Three years into this chapter 11 case, the Debtor In Possession (DIP) applied for approval to employ new special litigation counsel under 11 U.S.C. § 327,[6] with a post-petition retainer of $3,500.00 to be paid by a third party, the Debtor's principal.[7] The order approving the law firm's employment application states that "compensation [is] to be paid in such amounts as may be allowed by the Court upon proper application in accordance with §§ 330 and 331," the firm shall not be paid by the estate, and the firm waives entitlement to an administrative expense.[8]

Bankruptcy court is not foreign to the firm's lead attorney for this case ("Special Counsel"), but he has primarily represented creditors here. This case appears to be one of just three in a span of more than a decade in which he has been approved for employment as counsel to a bankruptcy estate fiduciary.[9] Representation of a bankruptcy estate involves obligations imposed by the Bankruptcy Code that a creditor's attorney does not have to meet, including, importantly, disclosing payments when they are received and seeking the bankruptcy court's authority to be compensated for services rendered and reimbursed for expenses incurred.

According to the DIP's monthly operating reports, and without his filing an application for compensation, Special Counsel, on behalf of his firm, sought and received multiple payments totaling $39,750.00, for compensation of services rendered and for expense reimbursement.[10] All of the payments were paid by third-party entities on behalf of the DIP.[11] Although the *expectation* of the $3,500.00 retainer was mentioned in the initial employment application, Special Counsel's firm did not disclose any of the payment receipts as they occurred.[12]

The United States Trustee learned of some of these undisclosed and unapproved

---

4. All subsequent references to rules herein are to the Federal Rules of Bankruptcy Procedure.

5. The term "proceedings" as used in 28 U.S.C. §§ 157 and 1334 refers to all of the civil proceedings that are initiated after a bankruptcy petition is filed, whether called "administrative matters, controversies, adversary proceedings, contested matters, suits, actions, or disputes." 1 *Collier on Bankruptcy* ¶¶ 3.01[2], 3.02[2] (16th ed. 2016). *See, e.g., In re Dunkin's Diamonds*, 420 B.R. 889, 891 (Bankr. M.D. Fla. 2009).

6. All subsequent references to statutes herein are to Title 11 of the United States Code.

7. Doc. No. 600.

8. Doc. No. 618.

9. The other two are *In re Aneco Electrical Construction, Inc.*, Case No. 8:04–bk–24883–PMG, and *In re AmMed Surgical Equipment, LLC*, Case No. 8:14–bk–9801–KRM. The first case was dismissed on the debtor's motion before a plan was filed and applications for administrative expenses were due. In the second, Special Counsel's firm's fee applications were approved after confirmation of the liquidating plan, with the administrative expenses to be paid as provided in the plan.

10. Doc. No. 729.

11. *Id.*

12. The DIP reported the payment of the retainer as $3,550.00. *Id.*

payments and, as a result, filed the Motion. Only after the Motion was filed did Special Counsel file an application for compensation and expense reimbursement on behalf of his firm.[13] In the application, he seeks a total award of $47,852.21 and discloses a bulk receipt of $38,200.00 in addition to the retainer. The total receipts reported in the application are $1,950.00 more than those the DIP reported on its monthly operating reports. Since then, Special Counsel has worked cooperatively with the United States Trustee to meet his duties as an attorney to the estate and to resolve this contested matter.[14]

### Legal Analysis

Resolution of the issues raised in the Motion involves the interplay between the Bankruptcy Code at §§ 329–330 and Rules 2016 and 2017. These statutes and rules work together to provide a framework for systemic oversight of administrative costs, reasonableness of fees, and any questionable relationships of third-party payors to the DIP and the attorney in bankruptcy cases. Such oversight is necessary because payments to a debtor's attorney "provide serious potential for evasion of creditor protection provisions of the bankruptcy laws and serious potential for overreaching by the debtor's attorney, and [therefore, such payments] should be subject to careful scrutiny."[15]

The starting point is § 329(a), which states:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.[16]

Rule 2016(b) provides the following procedure for implementing § 329:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. ... A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.[17]

Stated concisely, Rule 2016(b) requires debtors' attorneys to disclose at the outset all fees paid or agreements regarding fees to be paid, and thereafter they must disclose post-petition transactions within 14 days.

Then, an assessment of the reasonableness of fees is guided by § 330 and Rule 2017(b). Not only must the compensation sought be reasonable, but also it must be for "actual, necessary services," and reimbursement for costs must be for "actual, necessary expenses."[18] In reviewing the reasonableness of fees, the bankruptcy

---

**13.** Doc. No. 717.

**14.** This finding is based on the language in the United States Trustee's proposed agreed order.

**15.** H.R. Rep. No. 95–595, at 329 (1977), *reprinted* 1978 U.S.C.C.A.N. 5963.

**16.** 11 U.S.C. § 329(a).

**17.** Fed. R. Bankr. P. 2016(b).

**18.** 11 U.S.C. § 330(a)(1)(A),(B).

court considers "the nature, the extent, and the value of such services, taking into account" a non-exclusive list of factors set out in § 330(a)(3), including

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code];

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].[19]

And even if the above factors are satisfied, § 330(a)(4) instructs that the bankruptcy court cannot allow compensation for "unnecessary duplication of services" or "services that were not reasonably likely to benefit the debtor's estate" or which were not "necessary to the administration of the case."[20]

■ The considerations expressly set out in § 330(a)(3),(4) essentially lead one to the underpinnings of a lodestar analysis. A lodestar analysis involves multiplying the reasonable number of hours expended on necessary services by a reasonable hourly rate for each timekeeper.[21] Adjustments to the lodestar, both in terms of hours and rates, were historically determined with reference to 12 factors known as the *Johnson* factors.[22] However, given the 1994 amendments to § 330, some of the *Johnson* factors are now subsumed or overlapped by the statute.[23]

And, finally, Rule 2017(b) provides:

On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment,

---

19. 11 U.S.C. § 330(a)(3)(A–F).

20. 11 U.S.C. § 330(a)(4)(A).

21. *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990) (requiring bankruptcy courts to utilize the lodestar method when determining reasonable compensation under § 330).

22. *Id.* The factors are taken from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The 12 factors are: (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson*, 488 F.2d at 717–719.

23. The Bankruptcy Reform Act of 1994 proposed new statutory criteria for courts to utilize in determining professionals' compensation. That Act grafted on new subdivision § 330(a)(3), quoted above.

transfer, or agreement therefor is for services in any way related to the case.[24]

This rule emphasizes the necessity of timely disclosure: It cannot be gainsaid [25] that no scrutiny of reasonableness can be had absent that basic first step (which occurred belatedly here).

■ Compliant disclosures provide the means for timely systemic oversight by the bankruptcy court and parties in interest, as discussed above. As noted by § 329(a) and Rule 2016(b), the obligation to disclose payments falls upon a debtor's attorney, even though in a chapter 11 case a debtor in possession must likewise report the payments in its regular financial operating reports.[26] This dual reporting requirement in chapter 11 cases creates a check-and-balance system further enabling the bankruptcy court and other parties in interest to discern the transactions between the debtor in possession and its attorneys. Nondisclosure—or even untimely disclosure—of post-petition payments or agreements in violation of Rule 2016(b) impedes systemic supervision and prevents timely review of the reasonableness of professional fees envisioned by Rule 2017(b).

In this case, Special Counsel failed to comply with Rule 2016(b)'s mandate to provide complete and accurate disclosure of post-petition transactions between the attorney, the DIP, and third-party payors on behalf of the DIP. And, as a result, it was not until parties in interest learned of the transactions that any such party could review the fees and bring to the Court's attention any transactions that arguably could be deemed excessive within the meaning of § 330(a) and Rule 2017(b).

■ The essence of the duty imposed by § 329 and Rule 2016(b) is *complete* transparency, meaning

An attorney is required to "lay bare all of [his] dealings" concerning compensation agreements, payments, property transfers, etc. all made by, for, or on behalf of the debtor so that the court and parties are not forced to "ferret out pertinent information." ... In short, "coy or incomplete disclosures" are "less than the full measure of disclosure" required under the Bankruptcy Code and Rules and are unacceptable even if they arise merely as the result of negligence or inadvertence.[27]

Given the importance of transparency, it is fitting that the failure to comply with § 329 and Rules 2016(b) and 2017(b) constitutes sufficient grounds for the Court to exercise its inherent power and discretion to deny *all* fees and costs sought by Special Counsel's firm and to direct disgorgement of fees and costs already received.[28]

---

24. Fed. R. B. P. 2017(b).

25. As many students of bankruptcy jurisprudence may recognize, this phrase was a favorite of the Honorable Alexander L. Paskay, Chief Judge Emeritus of this Court and my bankruptcy law professor, and is employed here in his memory. Another apt phrase of his for use here would be, "it is without peradventure that . . . ."

26. *See* Fed. R. B. P. 2015(a)(5), (6).

27. *Walton v. Whitcomb (Matter of Whitcomb)*, 479 B.R. 133, 140 (Bankr. M.D. Fla. 2012) (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991)).

28. *See, e.g., Vergos v. Mendes & Gonzales, PLLC (In re McCrary & Dunlap Constr. Co., LLC)*, 79 Fed.Appx. 770, 780 (6th Cir. 2003) (denial of all compensation based on noncompliance with Bankruptcy Code and Rules "through mere negligence" not an abuse of discretion); *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001) ("[t]o ensure [protection of both creditors and debtors against overreaching attorneys], bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules"); *Mapother v. Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) (noting that in

This is true even as to fees received from third parties.[29] Further, a finding of willfulness is not required; "[d]isgorgement may be proper even though the failure to disclose resulted ... from negligence or inadvertence."[30]

 However, it is also true that when a bankruptcy court exercises its inherent power to deal with a professional's noncompliance with disclosure obligations imposed by the Bankruptcy Code and Rules, the court may choose to temper that power with reasonable discretion under the circumstances of the case.[31] Although there is ample authority for a rigid, "zero-tolerance" approach,[32] this Court adopts a case-by-case approach. Factors for consideration under a case-by-case review may include, without limitation, the attorney's experience level in the subject area of practice, the attorney's willfulness or recklessness, whether the violation is a mere technical violation, the attorney's level of cooperation with parties in interest to rectify the noncompliance, the reason for the noncompliance, harm to the estate and mitigation of any harm, whether the attorney is operating under a reduced fee agreement[33] or other concessions, prior instances of noncompliance and the circumstances surrounding those instances, the promptness of any cure of the subject noncompliance, steps taken by the attorney to prevent similar conduct in the fu-

---

cases where attorneys have failed to disclose fee arrangements, courts have "consistently denied all fees"); *Whitcomb*, 479 B.R. at 145 (court ordered attorney to disgorge approximate amount of undisclosed post-petition additional fees attorney sought from debtor-clients); *In re Valladares*, 415 B.R. 617, 624–25 (Bankr. S.D. Fla. 2009) (full disgorgement of fees ordered based on attorney's having "repeatedly and willingly" violated the Bankruptcy Code's disclosure requirements); *In re Geller*, 2009 WL 361379, *2–3 (Bankr. S.D. Fla. 2009) (court ordered disgorgement of undisclosed fees despite finding no intentional concealment of fee agreement); *In re Gage*, 394 B.R. 184, 191 (Bankr. N.D. Ill. 2008) ("Many courts, perhaps the majority, punish defective disclosure by denying all compensation."); *cf.Prince v. Electro–Wire Products, Inc. v. Sirote & Permutt, P.C, (In re Prince)*, 40 F.3d 356, 361 (11th Cir. 1994) ("While complete denial of fees [for not disclosing connections as required by § 328] may be extreme in some instances .... 'This sanction serves to deter future wrongdoing by those punished and warn others who might consider similar defalcations.'") (quoting *Gray v. English*, 30 F.3d 1319, 1323 (10th Cir. 1994)).

**29.** *Kisseberth*, 273 F.3d at 719 ("[A]ny payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment) (quoting *In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989)).

**30.** *Kisseberth*, 273 F.3d at 721 (citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995)).

**31.** *Vergos*, 79 Fed.Appx. at 779–780 (providing comprehensive discussion of the application of discretion when dealing with noncompliance with provisions governing payment of compensation of bankruptcy professionals); *Gage*, 394 B.R. at 191 (extent to which compensation should be denied for failure to disclose fees rests within court's sound discretion and may include total or *partial* denial of compensation (emphasis added)).

**32.** *See, e.g.*, n. 28.

**33.** The initial version of this order included a finding supplied by the United States Trustee's proposed agreed order that Special Counsel had agreed to represent the DIP at an hourly rate reduced from his standard billing rate. Upon closer inspection, it appears that may not be the case. His firm's employment application states that the firm would charge "on an hourly basis at the rates normally charged for matters of this nature," Doc. No. 600, and the firm's application for compensation uses the same rates as stated in the employment application. Doc. No. 717. However, as noted above, Special Counsel's firm did provide a concession, a waiver of entitlement to an administrative expense.

**154**

ture, the excessiveness of compensation and expenses charged by the attorney, and—although alone the means cannot justify the ends—the results obtained for the estate.

### Conclusion

 As indicated above, Special Counsel's breach of his disclosure obligations provides a foundation for the denial and consequent disgorgement of *all* compensation. However, the Court concludes that although such a severe sanction is permissible, it is not warranted here. Special Counsel was not only new litigation counsel to the DIP, but also he apparently never represented a fiduciary of a bankruptcy estate where third parties routinely pay his bills. And Special Counsel's firm waived entitlement to an administrative expense.

It is plausible that Special Counsel was unaware that his duties under § 329 and Rule 2016(b) are triggered even when a third party pays his fees and that his failure to disclose accurately, completely, and timely the receipt of post-petition payments resulted from his lack of awareness. Giving him the benefit of the doubt, his failure would, thus, be unintentional. The Court realizes that a learning curve exists for any practitioner, but particularly in the early going as one gains experience in representing fiduciaries in bankruptcy cases. Coupled with the circumstance of his relative newness to the bankruptcy estate practice, the Court gives significant weight to Special Counsel's cooperation with the United States Trustee.

As for reasonableness of the compensation for services and expense reimbursement Special Counsel seeks, the Court is satisfied that the considerations of § 330 and Rule 2017(b) weigh in favor of approval of his firm's application for compensa-

tion and expense reimbursement as filed, were it not for his untimely disclosures.

For these reasons, the Court will not disapprove and require disgorgement of all payments Special Counsel's firm improperly received and failed to timely disclose. Rather, the Court orders that the firm refund to the DIP $1,250.00. The Court is confident that Special Counsel will, as he must, in all future matters accurately, completely, and timely comply with the duties under § 329 and Rule 2016(b).

Accordingly, the Motion is denied in large part and granted in small part as set forth above. The Court will enter a separate order on Special Counsel's firm's pending application for compensation and expense reimbursement, accounting for the foregoing $1,250.00 in disapproved fees.

ORDERED.